FLOREA & CO., INC. *v.* UNITED STATES

**No. 7761.—**

Entry No. 845859.

(Decided on rehearing [Reap. Dec. 7612] November 28, 1949)

*William Whynman* for the plaintiff.

*David N. Edelstein,* Assistant Attorney General (*Dorothy C. Bennett* and *Daniel I. Auster,* special attorneys), for the defendant.

COLE, Judge: Further discussion of this already long-pending litigation is necessary because of rehearing having been granted following my decision reported in *Florea & Co., Inc.* v. *United States,* 21 Cust. Ct. 280, Reap. Dec. 7612, which decision, due to the necessity of frequent references thereto, is set forth in full at this point. It is as follows:

"Because of the varied and rather unusual course this case has followed not only through this court, but also in the Court of Customs and Patent Appeals, it is fitting and proper, for a thorough understanding of the litigation, to review the earlier proceedings before discussing the issue as it comes before me at this time on remand, *Florea & Co., Inc.* v. *United States,* 35 C. C. P. A. 153, C. A. D. 387.

"At the original presentation before me, defendant moved for dismissal on the ground the appeal was invalid because plaintiff had not complied with sections 481, 482, 484, and 485 of the Tariff Act of 1930 (19 U. S. C. § 1481, 1482, 1484, and 1485), relating to the obligations of a consignee or agent as conditions precedent for proper entry and appraisement. Most of the record is directed to that motion. In support thereof, the Government introduced oral testimony and documentary evidence in the form of customs agents' reports, while the importer offered oral testimony of officers of the plaintiff corporation in opposition thereto. The proof is highly contradictory. I found that the preponderance in weight of the

evidence established that plaintiff's exporting agent in Japan, acting under instructions from the plaintiff corporation, deliberately falsified the invoice used on entry by showing a fictitious purchase price, making the merchandise subject to a lower rate of duty than would otherwise apply. It was my opinion then, and it is now, that Congress never intended to vest this court with jurisdiction over an appeal based upon entry papers, fraudulently prepared with the definite purpose of depriving the United States Government of revenue. Accordingly, the motion to dismiss was granted, *Florea & Co., Inc.* v. *United States,* 11 Cust. Ct. 384, Reap. Dec. 5908.

"At this point, it might be added to complete the review of this subject, that another case, *Florea & Co., Inc.* v. *United States,* 11 Cust. Ct. 377, Reap. Dec. 5907, was decided by me concurrently but took precedence in order of publication with my original decision in the present case, both being concededly part of the same transaction. There, too, defendant's motion for dismissal, based on substantially the same set of facts as those established here, was granted, from which decision, plaintiff, invoking the provisions of section 501 of the Tariff Act of 1930 (19 U. S. C. § 1501), has filed an application for review. That case has been suspended by agreement of counsel, pending the outcome of the present one, although the basis for my original disposition, dismissing the appeal, has never been adjudicated before the Court of Customs and Patent Appeals.

"In reviewing the instant case, Reap. Dec. 5908, *supra,* a majority of the second division held that 'there was substantial compliance by the consignee or his agent, with the provisions of the act of 1930,' and accordingly discussed the case on its merits, concluding that the importer had failed to make out a *prima facie* case and sustaining the original judgment, dismissing the appeal, *Florea & Co., Inc.* v. *United States,* 15 Cust. Ct. 376, Reap. Dec. 6190.

"On appeal by plaintiff (importer) to the Court of Customs and Patent Appeals, the case was remanded, the appellate court stating that 'Since no value was found by the trial court the clear duty of the division, when it held that it was error to dismiss the appeal for the reasons assigned by the trial court, was to reverse that judgment and remand the case to the trial court for proceedings in accordance with law.' *Florea & Co., Inc.* v. *United States,* 34 C. C. P. A. 26, C. A. D. 339.

"When the case came before me pursuant to mandate of the Court of Customs and Patent Appeals, for decision on the merits, I reviewed plaintiff's meager testimony, attempting to support its entered value, and found it to be insufficient to establish the claimed export value, within the statutory meaning thereof in section 402 (d) of the Tariff Act of 1930, and therefore sustained the appraised value. *Florea & Co., Inc.* v. *United States,* 17 Cust. Ct. 447, Reap. Dec. 6561.

"That decision was reviewed by the second division, a majority of whom adopted as their own my conclusion that the 'record herein fails to establish any value for the instant merchandise different from that found by the appraiser,' and accordingly affirmed the judgment sustaining the appraised value. *Florea & Co., Inc.* v. *United States,* 18 Cust. Ct. 536, Reap. Dec. 7155.

"When plaintiff presented its second appeal before the Court of Customs and Patent Appeals, the assignment of errors included one, No. 5, alleging that the appellate division of this court had erred 'In not making findings of fact and conclusions of law as required by the statute and in accordance with the decisions of this Court,' which formed the basis for disposition of the case by the appellate court without any discussion on the merits. It will be noted that in its application for review of my decision, Reap. Dec. 6561, *supra*, plaintiff made no assignment of error, like the one presented to the Court of Customs and Patent Appeals, claiming that the trial judge had failed to make findings of facts and conclusions of law.

"In its decision, C. A. D. 387, *supra*, the appellate court stated that neither the trial court nor the appellate division of the Customs Court complied with the provisions of section 501 of the Tariff Act of 1930 (19 U. S. C. § 1501) 'in that they did not set forth the facts and the reasons for their conclusions upon which their judgments were entered, as provided in section 501, *supra*,' and then made the following comment concerning the said assignment of error:

" * * * Furthermore, counsel in his brief in this case has supported appellant's assignment of error by correctly stating the law and has cited and quoted from decisions of this court holding that it is reversible error for the appellate division of the Customs Court to fail to set forth in its decision facts upon which its decision is based, and the reasons therefor.

"Counsel might have facilitated the disposition of the cause had it called to the attention of the courts below that neither court had stated the facts upon which their decisions were based, or the reasons therefor, as required by section 501, *supra*. Had it done so, delay in the final disposition of the issues of the case might have been avoided.

" * * * Accordingly, for the reasons stated, the judgment of the appellate division of the Customs Court is *reversed* and the cause *remanded* for proceedings consistent with the views herein expressed.

"The mandate issued pursuant to the decision just quoted, C. A. D. 387, *supra*, has been construed by the Second Division of this court as an order for remand to the trial judge; hence, the case is before me for disposition on the merits. I cannot, and I do not read the decision of the appellate court as requiring that I should, make findings of fact and conclusions of law different from those reached in my previous opinion, Reap. Dec. 6561, *supra*. I accept the foregoing decision as a direction to trial judges in reappraisement, that they shall, in deciding such litigation, set forth a summation of their findings of fact

and conclusions of law more or less mechanically, such as is the practice of a division of this court sitting in review of an appeal for reappraisement in answer to specific requirements of the statute. I shall proceed therefore with further reference to the facts and conclusions as indicated.

"Much of what is hereinafter set forth will have been taken from expressions in my previous decisions in this case, Reap. Decs. 5908 and 6561, *supra*, because my views on all phases of the litigation have not changed one iota from the original presentation thereof.

"The issue herein finds plaintiff seeking a higher export value, section 402 (d) of the Tariff Act of 1930 (19 U. S. C. § 1402 (d)), than that found by the appraiser. The situation arises by virtue of a Presidential proclamation issued pursuant to the provisions of section 336 of the Tariff Act of 1930 authorizing the Tariff Commission to 'investigate the differences in the costs of production of any domestic article and of any like or similar foreign article,' and to report to the President its findings with appropriate recommendations 'to equalize such differences.' The Presidential proclamation, 69 Treas. Dec. 393, T. D. 48183, affecting the instant merchandise, was issued on February 21, 1936, and declared that duty on wool knit gloves from Japan, valued at not more than $1.75 per dozen, shall be based on American selling price as defined in section 402 (g) of the Tariff Act of 1930.

"The shipment in question consisted of wool knit gloves designated as style or quality 7107. The merchandise was exported from Japan on May 2, 1936, and entered at the port of New York on May 26, 1936. Entry was made at the invoice price of 6.10 yen per dozen ($1.76 U. S. currency), representing, as claimed by plaintiff, export value, section 402 (d), *supra*. The appraiser found an export value of 5.90 yen per dozen ($1.70 U. S. currency), thus bringing into application the Presidential proclamation, T. D. 48183, *supra*. Accordingly, the merchandise was appraised on the basis of American selling price at $5.50 per dozen.

"The customs examiner, who examined and inspected the importation in question, was called as a witness by plaintiff to testify concerning certain elements essential to a proper appraisement. Such testimony from this customs official has no evidentiary value in this proceeding. The action of a customs examiner is purely advisory; it is in no way binding upon the appraiser. An examiner's official duty is to make recommendations of dutiable values, but the appraiser is not bound by such recommendations. The examiner does not appraise the merchandise; that is the function of the appraiser. *United States* v. *Eurasia Import Co., Inc.*, 33 C. C. P. A. 123, C. A. D. 326. See also *James Loudon & Co., for Wm. H. Floyd & Co.* v. *United States*, 9 Cust. Ct. 635, Reap. Dec. 5731. It follows from the

cited authorities that whatever attitude the customs examiner had in making his advisory return of the wool knit gloves in question, it has no influence toward a determination of the present issue. The appraiser found the value that plaintiff disputes, and such value carries a statutory presumption of correctness, section 501, *supra*, which cannot be disturbed by testimony of the customs examiner. For this reason, no mention was made of the witness' testimony in my previous decision, Reap. Dec. 6561, *supra*, and of course it will not be reviewed here.

"Plaintiff also sought to show its claimed dutiable export value through testimony from Melvin Adler, the treasurer of the plaintiff corporation, who stated that while in Japan he investigated the market by consulting 'exporters,' whom he described as 'people who purchased merchandise for clients who came from abroad and sold it to them at what they considered the best possible price.' The witness was unable to say whether these 'exporters' were manufacturers. As far as he knew, 'they may have connections with manufacturers, and in some way subsidies, which is also quite a custom in Japan.' Asked whether the 'exporters' quoted the manufacturers' price, he answered, 'I assume they quoted the list price, whether it was the manufacturers' price, I do not know.' On the matter of price, the witness testified, first, that he 'found out it was anywhere from 6.40 to 7 yen,' and then, later, stated that he purchased the gloves in question in the ordinary course of trade and paid 6.10 yen per dozen.

"The testimony of the witness, Adler, is vague, indefinite, and somewhat contradictory, and coming from an officer of the plaintiff corporation who instructed his foreign exporting agent to falsify the invoice used on entry, so as to show a higher price than that actually paid, the statements of the witness, referring to values in Japan, merit no consideration favorable to plaintiff's contention. As the trial judge, I was in a position to observe the bearing and demeanor of the witness, an important element in the light of the highly conflicting testimony herein.

"The importance attaching to the opportunity presented to a trial judge, permitting personal observation of witnesses, was recognized in *United States* v. *Louis Victor et al.*, 20 Cust. Ct. 362, Reap. Dec. 7522, where, as here, testimony of importers' and Government witnesses was directly contradictory. Commenting on the superior advantage held by the trial judge as a fact-finding court, a division of this court, reviewing a single judge in reappraisement, said: 'The trial judge had certain important advantages which are not afforded us in that he was confronted by all of the witnesses and could therefore observe their conduct and demeanor and was consequently better able to judge the character and credibility of their testimony.'

"For reasons hereinabove outlined, I find, as I did in my previous decision, Reap. Dec. 6561, *supra*, that 'Plaintiff's proof, attempting to support its entered value, is wholly inadequate under the requirements of the statute, said section 402 (d), defining export value.' Accordingly, I hold the appraised value to be the proper dutiable value.

"Stating my conclusions in accordance with the practice followed by a division of this court reviewing a trial judge in reappraisement, and which I regard as a requirement in the present case under the decision of the Court of Customs and Patent Appeals, C. A. D. 387, *supra*, I find as matter of fact on the basis of the record herein and for reasons hereinabove set forth:

"(1)  That the merchandise in question consists of wool knit gloves, designated as style or quality 7107, exported from Japan on May 2, 1936, and entered at the port of New York on May 26, 1936.

"(2)  That the export value, section 402 (d), *supra*, of said merchandise is 5.90 yen per dozen ($1.70 U. S. currency).

"(3)  That the merchandise in question is subject to the provisions of the Presidential proclamation, T. D. 48183, *supra*.

"(4)  That the proper basis for appraisement for the merchandise is American selling price as defined in section 402 (g) of the Tariff Act of 1930.

"Accordingly, I hold as matter of law that the statutory American selling price of these wool knit gloves is the appraised value.

"Judgment will be rendered accordingly."

Timely motion for rehearing filed by plaintiff and memorandum in opposition thereto were considered. Nowhere in the Government's objection to said motion is any point made to the effect that the case having been reviewed by the United States Court of Customs and Patent Appeals and *"remanded* for proceedings consistent with the views herein expressed," *Florea & Co., Inc.* v. *United States*, 35 C. C. P. A. 153, C. A. D. 387, that I, as trial judge, am precluded from reopening the case for any purpose whatsoever, but required to pass upon the record previously made and upon which my decision, Reap. Dec. 7612, *supra*, was based.

However, later, and at the hearing pursuant to order granting rehearing, counsel for the Government objected strenuously to the case being reopened to take further testimony for any purpose. While there may be some merit in such a position—and I am inclined to so recognize it—I feel bound to give due consideration to some developments, disclosed by the record, and which arose under the application for rehearing.

As counsel will recall, following the filing of the motion for rehearing, oral argument was had before me. At that time, it was very definitely understood among all concerned that but one addition to the record was contemplated, that counsel would attempt to prepare

a stipulation embodying the same, and that the oral argument would not be transcribed. What the parties had in mind was to incorporate into the record competent proof to the effect that the United States appraiser in this case had followed the recommendations of the customs examiner. At the original hearing of the case, said examiner, one William J. Pickett, testified at considerable length as to what he did. His testimony was fully weighed and considered by me in my previous decisions in this case, as it will be in this one.

Counsel, as they will recall, were unable to agree on a stipulation, as previously expected, so after a conference lasting several hours in my chambers, I issued the following order, which recapitulates some of the considerations leading up to my action, and clearly sets forth what was sought to be undertaken:

Motion for rehearing filed in the above entitled proceedings in August, 1948, and the memorandum in opposition thereto, filed shortly thereafter, have been read and considered by the Court.

Argument in open court was had on the motion in September, 1948. It developed during that argument, as the record discloses, that in the event rehearing was ordered, the contentions raised by plaintiff could be embodied in a stipulation, in view of statements made by counsel for defendant. In anticipation of such a stipulation being presented, which would be accepted as part of the record in lieu of reopening the case for further proceedings, action on the motion was deferred to give counsel an opportunity to consult further and report the results to the Court.

At the request of counsel, the Court met with them in chambers and was advised of the fact they were unable to agree as was contemplated.

It is therefore ORDERED this seventeenth day of February, 1949, that the judgment heretofore entered in the above entitled proceedings be and the same is hereby vacated and set aside, rehearing granted, and the case restored to the calendar.

At the hearing, following the foregoing order, plaintiff recalled its witness, Melvin Adler, who had previously testified very considerably in all of the several trials between these litigants. I permitted the witness to be asked certain questions to all of which Government counsel objected, and after an adverse ruling, took an exception. The testimony thus offered, which was very brief, consisted of nothing but a reaffirmation of previous testimony given by the same witness at the original hearing of this case before me on December 17, 1942. I can find no reason to apply to such testimony anything different from the analysis made of it in my decision, Reap. Dec. 7612, hereinabove set forth.

Another development at the rehearing of the case was the recall by plaintiff of Customs Examiner Pickett, who merely clarified an obvious discrepancy in his earlier testimony. The correction or clarification presents no reason for making any change in the comment on the witness' testimony as given in my decision, Reap. Dec. 7612, *supra.*

At the rehearing, counsel for plaintiff asked for a further continuance of the case for the purpose of calling the United States appraiser as a witness. This request was denied. Although counsel for the respective parties endeavored to agree as to what the appraiser would testify to, if called, and so stipulate—the admissibility of the same being left thereafter for decision by the court—they were unable to do so. For reasons deemed sufficient .by counsel for plaintiff the appraiser was not summoned as a witness. Finally, however, counsel for plaintiff stated that if the appraiser had been present and were called as a witness he would ask him but one question, "Did you follow and adopt the recommendations of the examiner?"

Government counsel made a general objection which was directed not only to the said question but also to the appraiser offering any testimony, as being incompetent, irrelevant, and immaterial. He further objected to any postponement of the case for the purpose of calling the appraiser as a witness.

Answering a question asked by the court, counsel for plaintiff stated that if the said customs official were present and called as a witness and answered "No" to the aforesaid question, plaintiff's counsel would have "to go further," but if he answered "Yes" then "I am through with him."

At this juncture, the court stated: "I am going to take the responsibility of denying your right to examine the appraiser to that extent. The position of the Court, Mr. Whynman, is that if the appraiser were here today, and you were permitted to ask him the questions and go into all the details of what the examiner did in arriving at his appraisement of this merchandise, I wouldn't let you do it and that brings up the legal question that you want and I would like to see disposed of in the Court of Customs and Patent Appeals, if it hasn't already been done."

So it will be readily seen that if the appraiser had thus appeared, I frankly stated that if the purpose of calling him was to offer testimony as to whether he followed or adopted the recommendations of the examiner, an objection to such questioning would be sustained. I could see no good reason in permitting further postponement of this litigation for the purpose of calling a witness to be asked a question already known to the court and which I consider clearly inadmissible.

It follows, therefore, that the rehearing of this case has contributed nothing to disturb my previous findings of fact and conclusions of law as set forth in Reap. Dec. 7612, *supra*, and which are again adhered to.

Judgement will be rendered accordingly.