469 F. 2d 1398

NATIONAL CARLOADING CORP. *v.* UNITED STATES (No. 5463, C.A.D. 1080)

---

United States Court of Customs and Patent Appeals, December 29, 1972

*Barnes, Richardson & Colburn*, attorneys of record, for appellant. *Joseph Schwartz, James S. O'Kelly*, of counsel.

*Harlington Wood, Jr.*, Assistant Attorney General, *Andrew P. Vance*, Chief, Customs Section, *John V. Henry* for the United States.

[Oral argument October 4, 1972 by Mr. O'Kelly and Mr. Henry]

Before MARKEY, *Chief Judge*, RICH, ALMOND, BALDWIN, and LANE, *Associate Judges*

LANE, *Judge*.

■ This is an appeal from the decision and judgment of the Second Division of the Customs Court, Appellate Term, 65 Cust. Ct. 830, A.R.D. 280 (1970), affirming the judgment of a single judge, 63 Cust. Ct. 594, R.D. 11681 (1969), sustaining the appraised values of certain unfinished condensers, or capacitors, of mica, imported from Japan in 1958. We affirm.

Appellant is the customs broker of Intercontinental Industries Inc. (hereafter Intercontinental), an importer of electronic components and related goods. The merchandise involved in this appeal consists of unfinished mica condensers and is sold to manufacturers of finished condensers who fashion a casing or apply an outside coating to finish the unfinished condensers. Finished condensers are used in radio and television equipment as well as computers.

The parties agree that the ■ proper basis of appraisement for the imported unfinished mica condensers is United States value, which, under the statutory scheme of the Tariff Act of 1930, as amended in the Customs Simplification Act of 1956, is resorted to in the absence of foreign or export value. United States value is defined in relevant part in § 402(c) of the Tariff Act of 1930, as amended, as:

[T]he price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal market of the United States for domestic consumption, packed ready for delivery, in the usual wholesale quantities and in the ordinary course of trade, with allowances made for—

> (1) any commission usually paid or agreed to be paid, or the addition for profit and general expenses usually made, in connection with sales in such market of imported merchandise of the same class or kind as the merchandise undergoing appraisement;

> (2) the usual costs of transportation and insurance and other usual expenses incurred with respect to such or similar merchandise from the place of shipment to the place of delivery, not including any expense provided for in subdivision (1); and

(3) the ordinary customs duties and other Federal taxes currently payable on such or similar merchandise by reason of its importation, and any Federal excise taxes on, or measured by the value of, such or similar merchandise, for which vendors at wholesale in the United States are ordinarily liable.

The appraiser held the value of the importations to be invoice price plus 13 percent. The importer claimed that invoice price is the proper value. The dispute centers about the allowance for profit and general expenses "usually made * * * in connection with sales in such market of imported merchandise of the same class or kind as the merchandise undergoing appraisement * * *." See § 402(c) (1), supra.

At the trial of this case, ■■■ appellant offered evidence to the effect that Intercontinental is the only importer and seller of unfinished mica condensers in this country. It argued below, and argues here, that as a result, there were no sales of "imported merchandise of the same class or kind as the merchandise undergoing appraisement" other than sales of the imported goods themselves. Appellant concluded that the importer's own general expenses and profits with respect to the sale of the imported unfinished mica condensers are those that must be deducted from gross selling price, along with the other allowable items, to arrive at United States value under the terms of the statute.

Appellant arrived at a figure which it contended represented the aggregate of general expenses and profits for these importations. The method of computation used is set forth in appellant's Exhibits 6 and 7, reproduced in the opinion below of the single judge, 63 Cust. Ct. at 599. In essence, appellant took the gross selling price of each condenser and deducted invoice price, transportation charges, insurance, bank commission, and customs duty to yield a figure labelled "gross markup" which appellant contends represents the sum of general expenses and profit. The items deducted, except for invoice price, are those for which allowances are permitted under the statute. It is apparent that under this method of computation, the selling price less the sum of the various deductible items equals the invoice price—appellant's claimed value.

The customs examiner who made the advisory return of value in this case, which was adopted by the appraiser, testified at trial. He stated that to the best of his recollection the determination of value was based on appellant's sales of unfinished mica condensers as well as sales of other products.

The single judge held that appellant had failed to prove the actual general expenses and actual profits incurred in sales of the involved merchandise as opposed to sales of other products.

The Appellate Term neither approved nor disapproved the rationale of the single judge. It found the evidence insufficient to establish that

the imported condensers are not of the "same class or kind" as unfinished condensers of other materials or finished condensers of mica. The Appellate Term therefore affirmed the judgment of the trial court.

OPINION

We do not agree with the approach taken by the Appellate Term. Appellant has proved, without contradiction, that the importer was, at the relevant time, the sole importer of unfinished mica condenser sections. That establishes, prima facies, that there is not other merchandise of the "same class or kind." Had the Government sought to assert that other goods are of the same class or kind, it could have presented some evidence to that effect. Appellant could not have been expected to anticipate any reliance upon unfinished condenser sections of materials other than mica and finished mica condensers as merchandise of the "same class or kind" as unfinished mica condensers.

In any event, the conclusions of the Appellate Term are purely speculative and without any support in the record. We have found no evidence that there was even in existence an industry involved in the sale of unfinished condensers of materials other than mica. As for finished mica condensers, the evidence of record points to marked differences over unfinished mica condensers, and there appears to be no evidence tending to support a contention that they are of the same class or kind as unfinished mica condensers.

The reasoning of the trial court, on the other hand, is sound on the facts of this case, and it is on that basis that we affirm the judgment below. Starting with the premise that there is no other merchandise of the "same class or kind" as unfinished mica condenser sections for the reasons stated above, it follows that United States value in this case would be based on the present importer's own general expenses incurred, and profit added, in connection with sales of the imported goods. See *United States* v. *Jovita Perez*, 36 CCPA 114, 118–19, C.A.D. 407 (1949); *English Electric Export & Trading Co.* v. *United States*, 53 CCPA 84, 88, C.A.D. 881 (1966). The question determinative of this appeal is whether appellant's method of computing markup leads to the expenses and profit related to the imported merchandise. We agree with the single judge that it does not.

*Hill Brown Corp.* v. *United States*, 54 CCPA 99, C.A.D. 917 (1967), also involved the propriety of a method of assessing general expenses and profit. The appellant was engaged in three distinct business operations, one of which was the importation of the merchandise there in suit. The general expenses incurred in sales of the imported merchandise were calculated by computing the overall general expenses of the three operations and multiplying that total by the proportion of sales of the imported goods to total sales of all goods. This court held that

method of computation to be insufficient since it had not been shown that it was reasonable to assume that general expenses incurred in the sale of the imported item bore the same relation to total general expenses as sales of the item bore to total sales.

In the present case, it appears that Intercontinental sells a variety of goods. There is no indication that in fixing the markup for the unfinished mica condensers the importer isolated and included only the general expenses, and, similarly, profit, attributable to the sale of this class of goods. Rather, the president of Intercontinental testified that:

We constructed the formula [for markup] on the basis of mica sections in terms of total sales and based on the total operating expenses of the company and total sales of our operation, pro rated in terms of sales of mica sections.

This is precisely the procedure found wanting in *Hill Brown*, and, like the record in *Hill Brown*, the present record fails to establish any correlation between relative sales and relative expenses.

At the trial of this case, appellant strenuously sought to avoid being faced with this type of analysis. It was argued that a different theory was being pursued. Specifically, appellant urged below, and asserts here, that under the authority of *Philipp Wirth* v. *United States*, 23 CCPA 283 (1936), general expenses and profit need not be separately proved and that the method of showing the markup, which presents a lump sum of general expenses and profit, is therefore entirely proper.

*Philipp Wirth* involved cost of production which, under the applicable tariff statute, was the sum of (1) cost of materials and fabrication, (2) usual general expenses, (3) cost of packing, and (4) profit. The importers had presented evidence of item (1) in the form of a lump sum of cost of materials and cost of fabrication. The Customs Court found it insufficient. This court held that, as a matter of statutory construction, only items (1), (2), (3) and (4) had to be separately proved. Within an item, such as (1), the various elements could be proved as a lump sum. In reversing and remanding, this court stated:

The appellate division determined this matter solely upon the theory that the statute requires the breaking down, or further itemization, of the information covered by said subparagraph (1). It did not consider the evidence offered on cost of production. This was, in our opinion, error. The evidence should have been considered. What it did, or did not, disclose, and the weight to be given to it, are matters committed to the jurisdiction of the court below, and are not within the jurisdiction of this court.[1]

Appellant reasons that, by analogy to the *Philipp Wirth* holding, general expenses and profit under the provision for United States value need not be separately proved. The argument goes as follows:

---

[1] 23 CCPA at 287–88.

Both the Second Division and the trial judge agreed in principle that section 402(c)(1) does not require separate itemization of profit and general expenses. The trial judge, however, applied the principle in a manner that would make it meaningless. He held that the importer was required to, in effect, breakdown [sic] the markup and to demonstrate the elements of general expense and profit contained in the markup figure * * *. This would completely vitiate the sense of the [holding] in * * * *Philipp Wirth* * * * for it necessarily requires the importer to separately itemize general expenses and profit in order to demonstrate that all proper elements have been included.

The "sense of the holding" in *Philipp Wirth*, carried by analogy to the United States value, would simply be that general expenses and profit need not be proved separately, *if* they can be proved as a sum. Appellant has *not* proved that the asserted markup is the sum of general expenses *incurred in the sale of unfinished mica condensers* and profit added *in connection with the sale of unfinished mica condensers*. As is clear from the portion of the *Philipp Wirth* opinion reproduced above, the court did not hold that any evidence of the sum of the factors set forth in subparagraph (1) would be sufficient. The evaluation of the particular evidence in the case was left to the Customs Court.

By the argument presented to this court, appellant seeks to accomplish indirectly what *Hill Brown* plainly holds cannot be done directly. The argument seeks to elevate a principle of construction dealing with the form of the proof above the statutorily required substance of the proof. It is apparent that the contention must fail where, as here, the evidence, although presented in theoretically acceptable form, is substantively insufficient.

The decision and judgment of the Customs Court is *affirmed*.