**R. J. SAUNDERS & CO., INC.,**
Appellant,

v.

The **UNITED STATES,** Appellee.

**A.R.D. 314; Reappraisement R61/1601–0364 and six others.**

United States Customs Court,
Second Division, Appellate Term.

June 19, 1973.

———◆———

Sharretts, Paley, Carter & Blauvelt, New York City (Gail T. Cumins, New York City, of counsel), for appellant.

Harlington Wood, Jr., Asst. Atty. Gen. (Bernard J. Babb, New York City, trial atty.), for appellee.

Before RAO, FORD, and NEWMAN, JJ.

RAO, Judge:

This is an application for review of a decision and judgment of the trial court, sustaining the appraised values of a

chemical known as thiourea, exported from Japan during the period from October 1958 through July 1964. R. J. Saunders & Co., Inc. v. United States, 69 Cust.Ct. ——, R.D. 11771 (1972) (motion for rehearing denied October 20, 1972).

Thiourea appears on the Final List published by the Secretary of the Treasury pursuant to section 6(a) of the Customs Simplification Act of 1956, under the heading "Industrial Chemicals." 93 Treas.Dec. 14, 29, T.D. 54521 (1958). The imported merchandise was appraised on the basis of foreign value, as that value is defined in section 402a(c), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956. It is claimed that the merchandise should have been appraised on the basis of United States value, as that value is defined in section 402a(e) of said act.

■ The trial court pointed out that in order to reach United States value, plaintiff must first disprove the existence of a foreign and an export value for such and similar merchandise. It stated that plaintiff had adduced persuasive evidence that thiourea was not freely offered for sale either for home consumption or for exportation to the United States, but that the record was devoid of evidence that similar merchandise was not freely sold in Japan in the home market or for export, or that no similar merchandise existed. It therefore held that plaintiff had not met its burden of proof.

In a recent case, Nichols & Company, Inc. v. United States, 59 CCPA 67, C.A.D. 1041, 454 F.2d 1183 (1972), our appellate court held that even if appellant proved that "such" merchandise was not freely offered for home consumption during the relevant period, in order to negate the existence of foreign value, it still had to establish that "similar" merchandise was not so offered. It determined that appellant had not sustained its burden of proof on the ground that the record lacked evidence concerning what, if any, merchandise was "similar" in a statutory sense to the imported

goods and whether a foreign value existed therefor.

It is appellant's position in the instant case that thiourea, being a chemical compound, is unique in that it has a fixed formula and a spatial arrangement which differs from every other chemical compound; that it has its own chemical and physical properties; that every other compound differs from it in one or more of the following characteristics: The elements of which it is composed; the number of atoms of each element of which it is composed; the internal arrangement of its elements; and the physical and chemical properties of the compound itself. It therefore claims that there is no merchandise similar to the imported thiourea except thiourea produced by other manufacturers.

■ However, no evidence has been presented to sustain this claim. A finding that merchandise is or is not similar to other goods must be based upon substantial evidence, not on inference, argument, or interpretation. United States v. Wecker & Co., 16 Ct.Cust.Appls. 220, T.D. 42837 (1928); United States v. Kraft Phenix Cheese Corp. et al., 26 CCPA 224, C.A.D. 21 (1938); H. J. Heinz Company v. United States, 43 CCPA 128, C.A.D. 619 (1956); A. Zerkowitz & Co., Inc. v. United States, 58 CCPA 60, C.A.D. 1005, 435 F.2d 576 (1970), cert. den., 404 U.S. 831, 92 S.Ct. 72, 30 L.Ed.2d 60 (1971); W. R. Zanes & Co. et al. v. United States, 43 Cust.Ct. 568, Reap.Dec. 9557 (1959).

In support of its uniqueness claim, appellant quotes in its brief a definition of thiourea from Snell & Snell's Chemicals of Commerce, 2d edition (p. 296), as follows:

*Thiourea,* $CS(NH_2)_2$, is the product of reaction of carbon bisulfide and ammonia through the intermediate formation of ammonium thiocarbamate, or reaction of cyanamide with hydrogen sulfide. Both CP and technical grades serve for synthesis of organic sulphur compounds.

See also *Webster's Third New International Dictionary* (1967 edition):

thiourea: a bitter crystalline compound $CS(NH_2)_2$ that is analogous to urea with the oxygen replaced by sulfur and resembles urea in chemical properties, that is obtained by heating ammonium thiocyanate or by adding hydrogen sulfide to cyanamide, and that is used chiefly in the separation of hydrocarbons (as various liquid normal paraffin hydrocarbons from branched-chain hydrocarbons), in organic synthesis, and esp. formerly in synthetic resins.

However, similarity or dissimilarity is not determined for tariff purposes solely by the chemical formula or molecular structure of a product.

In Scharf Bros. Co. (Inc.) v. United States, 16 Ct.Cust.Appls. 347, T.D. 43089 (1928), the trial court found rock candy sold for export was similar to that sold for home consumption on the ground that it was similar in chemical composition. The court of appeals rejected that ground, stating that "a thing may be similar chemically and yet not similar within the meaning of the word as used" in the tariff act. It then found similarity on the ground that both types of candy were made in the same kind of vats, by the same process, and out of the same material; they were approximately the same value, identical in composition, taste, color, and use, differing only in the size of crystals. They were held commercially interchangeable.

In United States v. Philipp Bros. Chemicals, Inc., 56 Cust.Ct. 816, A.R.D. 208 (1966), it was held that special grades of sodium peroxide were not similar to normal grades on the basis of evidence showing that they had different characteristics, specifications, and uses, and that one would not be used in place of the other.

See also Basf Colors & Chemicals, Inc. v. United States, 56 CCPA 47, p. 52, C.A.D. 952, 420 F.2d 763, p. 767 (1969), where the question was whether a chemical known as HMD was subject to appraisement on the basis of American selling price because it was similar to certain coal-tar products provided for in paragraphs 27 and 1651, Tariff Act of 1930. The court stated:

In holding that the evidence failed to overcome the presumption attaching to the appraisement that HMD was similar to one or more of the products mentioned in paragraphs 27 or 1651, the [trial] court found:

In sum, plaintiff has introduced much detailed evidence on dissimilarity in molecular structure, but the testimony as to differences in other properties, uses, purposes, and applications is more general. It does show some differences in properties between aromatic and aliphatic compounds as classes, but Dr. Mark admitted that there were some overlapping cases. There is no evidence establishing whether or not HMD is in the overlapping category. While the difference in molecular structure may be of great importance to chemists, Congress was legislating in terms of commerce. Therefore, an important, if not the most important, factor is whether the difference in molecular structure indicates any wide difference in practical applications of the two classes of chemicals, and particularly whether HMD has similar commercial uses to any of the products listed. On this point, the evidence is unsatisfactory.

The terms "such or similar" are not used synonymously in tariff statutes, but alternatively. "Such" means identical merchandise and "similar" refers to merchandise which is like but not identical. United States v. Irving Massin & Bros., 16 Ct.Cust.Appls. 19, T.D. 42714 (1928), and cases cited; Meadows, Wye & Co. (Inc.) et al. v. United States, 17 CCPA 36, T.D. 43324 (1929).

It may well be that no chemical compound is identical to another, but there is no reason to suppose one may not be similar to another for tariff purposes.

In the *Massin* case, *supra*, the court held that "if goods are made of *approximately* the same materials, are commercially interchangeable, are adapted to substantially the same uses, and are so used, ordinarily, they are similar." (Emphasis supplied.)

In United States v. Wecker & Co., *supra*, the court said (p. 225):

\* \* \* The question of similarity is, in each case, to be measured by much the same homely rule that applies to the prospective customer who enters a store seeking some utilitarian article of a certain specified name and style; he finds the article requested is not in stock but that another article, of approximately the same price and which will perform the same functions, is capable of the same use and may be substituted therefor, is available. Such an article is a similar article, notwithstanding the price, the methods of construction, and the component materials may be somewhat different; but, for all utilitarian purposes, one is a substitute for the other. \* \* \*

In C. J. Tower & Sons v. United States, 50 CCPA 76, C.A.D. 824 (1963), the court discussed the factors to be considered in determining similarity: similarity of use and materials, and commercial interchangeability. It held that the overriding consideration was commercial interchangeability.

In the cases cited by appellant, where dissimilarity was found, the findings were based on proof that the two classes of merchandise had different uses and materials, and were not commercially interchangeable. United States v. Kraft Phenix Cheese Corp. et al., *supra*; United States v. Stephen Rug Mills, 16 Cust. Ct. 369, Reap.Dec. 6283 (1946); United States v. F. Vietor & Achelis, 17 CCPA 412, T.D. 43864 (1930).

While it may be that there is no product similar in material and use to thiourea or commercially interchangeable with it, this *cannot be determined without* evidence, on the theory that thi-

ourea, being a chemical compound, is unique and there cannot be a similar product.

Appellant construes a statement in Millmaster International, Inc., et al. v. United States, 58 Cust.Ct. 711, 717, R.D. 11304 (1967), that there was "neither a statutory foreign value for such (Degussa's) thiourea, nor a statutory foreign value for similar (Trostberg's) thiourea," as a *specific recognition* by the court that the only merchandise similar to thiourea was thiourea produced by other manufacturers. The court made no such finding, but was satisfied on the record presented that neither such nor similar merchandise was freely offered for sale or sold for home consumption or for exportation in West Germany during the relevant period. The decisions in the Appellate Term and in the Court of Customs and Patent Appeals turned on quite another point. Millmaster International, Inc., et al. v. United States, 61 Cust.Ct. 613, A.R.D. 247 (1968), rev'd, 57 CCPA 108, C.A.D. 987, 427 F.2d 811 (1970).

Appellant also claims that the fact that thiourea is specified in the Final List without additional or qualifying words is an indication that there is no product which is similar thereto. It argues that if this court were to conclude that there is merchandise similar to thiourea the result would be that thiourea would be valued under the "old" law on the basis of the foreign value of merchandise which is not subject to "old" law provisions. This would follow only if the similar merchandise were not itself specified in the Final List. Moreover, we do not think the naming of an article in the Final List was intended to indicate that no similar merchandise could exist.

Appellant has cited National Carloading Corp. v. United States, 60 CCPA ——, C.A.D. 1080, 469 F.2d 1398 (1972), where it was proved without contradiction, that the importer was at the relevant time, the sole importer of unfinished mica condenser sections. The court held that appellant had established

prima facie that there was no other merchandise of the "same class or kind" and that it could not have been expected to anticipate any reliance upon unfinished condenser sections of materials other than mica and finished mica condensers as merchandise of the "same class or kind."

We are concerned here, however, with the burden resting on appellant to establish the nonexistence of similar merchandise. Directly in point is Nichols & Company, Inc. v. United States, *supra*, where the court said:

* * * Other than the above isolated lay references to "similar" merchandise, the record is remarkably devoid of evidence concerning what if any merchandise was "similar" in the statutory sense to the importations at bar at the relevant time and in the relevant place, let alone whether or not a statutory foreign value existed for such merchandise. Accordingly, we agree with the Appellate Term, that appellant failed to negate the existence of a French foreign value for "similar" merchandise * * *.

 Since the record in the instant case is likewise devoid of evidence concerning what, if any, merchandise is similar in the statutory sense to thiourea, appellant has failed to meet its burden of negating the existence of a foreign or an export value for similar merchandise. The appraised values must be sustained.

On the record presented we find as facts:

1. That the imported merchandise consists of thiourea which was exported from Japan during the period from October 1958 through July 1964.

2. That the merchandise was appraised on the basis of foreign value, as defined in section 402a(c) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, at a value of 220 yen per kilogram, net packed.

3. That the merchandise is described on the Final List of the Secretary of the Treasury, 93 Treas.Dec. 14, 29, T.D. 54521 (1958).

4. That the evidence herein fails to establish that at the times of exportation of the involved merchandise no articles similar to thiourea existed.

5. That the evidence herein fails to establish that at the times of exportation of the involved merchandise, similar merchandise was not freely offered for sale for home consumption or for exportation to the United States.

We conclude as matters of law:

1. That without evidence it cannot be held that no merchandise similar to thiourea existed, on the theory that, being a chemical compound, it is unique and no similar product can exist.

2. That the proper basis of appraisement for the imported merchandise is foreign value, as defined in section 402a(c) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

3. That the correct values for the imported merchandise are the appraised values.

The judgment of the trial court is affirmed.